1    Tracy W. Costantino (SBN 192847)
     Tracy.Costantino@jacksonlewis.com
2    Jade M Brewster, (SBN 303116)
     Jade.Brewster@jacksonlewis.com
3    JACKSON LEWIS P.C.
     725 South Figueroa Street, Suite 2500
4    Los Angeles, California 90017-5408
     Telephone: (213) 689-0404
5    Facsimile: (213) 689-0430

6    Attorneys for Defendants
     VEOLIA ENERGY NORTH AMERICA, LLC;
7    VEOLIA WATER NORTH AMERICA
     OPERATING SERVICES, LLC; VEOLIA
8    WATER NORTH AMERICA-WEST, LLC

9                  UNITED STATES DISTRICT COURT

10               CENTRAL DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12   MITCHEL PARKER, individually and on behalf of all others similarly situated, | Case No.: |
| 13             Plaintiff, | **NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE** |
| 14       vs. | **CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28** |
| 15   VEOLIA ENERGY NORTH AMERICA, LLC; VEOLIA WATER | **U.S.C. §§ 1332, 1367(a), 1441(a) AND (b)** |
| 16   NORTH AMERICA OPERATING | |
| 17   SERVICES, LLC; VEOLIA WATER NORTH AMERICA-WEST, LLC; and DOES 1 through 20, inclusive | (Filed concurrently with Declarations; Civil Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement) |
| 18 | |
| 19          Defendants. | |
| 20 | |
| 21 | Action File: January 15, 2019 |
| 22 | |

23      **TO THE HONORABLE CLERK OF THE UNITED STATES**

24 **DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,**

25 **PLAINTIFF, AND HIS COUNSEL OF RECORD:**

26      **PLEASE TAKE NOTICE** that Defendants Veolia Energy North America,

27 LLC, Veolia Water North America Operating Services, LLC, and Veolia Water

28 North America-West, LLC (collectively "Defendants") hereby invokes this Court's

jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1367(a), 1441(a), and 1441(b) to remove this action from the Superior Court of California for the County of San Bernardino based on diversity jurisdiction.  In support thereof, Defendants aver the following:

### STATEMENT OF JURISDICTION

1.     The District Court has diversity jurisdiction under 28 U.S.C. § 1332(a) where the matter is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Where the claims of at least one named Plaintiff satisfies the amount-in-controversy requirement and the other elements of jurisdiction are present, a district court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the claims of the alleged putative class members in the same case, even if those claims are for less than the jurisdictional minimum for diversity jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 549, 552–566 (2005); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940–941 (9th Cir. 2001).

2.     As set forth below, jurisdiction within the District Court is proper on the grounds herein described and the Action is timely and properly removed upon the filing of this Notice.

### PLEADINGS AND PROCESS

3.     On January 15, 2019, Plaintiff Mitchel Parker ("Plaintiff") filed a putative class and representative action Complaint in the Superior Court of California for the County of San Bernardino, bearing Case Number CIVDS19013151, alleging the following claims: (1) Failure to Pay Minimum Wage; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay All Wages Due Upon Separation of Employment; and (7) Violation of Business and Professions Code §§ 17200, *et seq.* (See Complaint attached as Exhibit A to the Declaration of Tracy Costantino

1   ("Costantino Decl."), ¶ 2.)

2      4.    Defendants were served by certified mail a copy of Plaintiff's
3   Complaint, but no summons, on January 18, 2019. (See Service of Process
4   Transmittal Sheets attached to Exhibits A, B, and C to Costantino Decl., ¶ 3).

5      5.    Defendant Veolia Water North America Operating Services, LLC
6   received a summons with the same complaint on January 31, 2019. (See Service of
7   Process Transmittal Sheet attached as Exhibit D to Costantino Decl., ¶ 3).

8      6.    As of the date of this Notice of Removal, the pleadings and papers in
9   Exhibits A, B, C and D constitute all court filings with which Defendants have been
10   served. (Costantino Decl. ¶ 4.)

11                      **TIMELINESS OF REMOVAL**

12      7.    This Notice of Removal has been filed within thirty (30) days after
13   Defendants were served with a copy of Plaintiff's Complaint upon which this action
14   is based. *See Murphy Bros., Inc. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353
15   (1999) (actual service of process is the official trigger for responsive action by a
16   named defendant as opposed to receipt of complaint through other means). This
17   Notice of Removal is therefore filed within the time period provided by 28 U.S.C. §
18   1446(b).

19             **NOTICE TO ALL PARTIES AND STATE COURT**

20      8.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel
21   certifies that a copy of this Notice of Removal and all supporting papers promptly
22   will be served on Plaintiff's counsel and filed with the Clerk and the San
23   Bernardino County Superior Court. Therefore, all procedural requirements under
24   28 U.S.C. § 1446 have been satisfied.

25                          **VENUE**

26      9.    Venue of this action lies in the United States District Court for the
27   Central District of California, pursuant to 28 U.S.C. § 1441 *et seq.* and 28 U.S.C. §
28   1391(b)(3), as this is the judicial district where Plaintiff filed his Complaint in State

1    Court, and Plaintiff alleges that Defendants conduct business in the State of
2    California.  (Complaint, ¶ 9.)

3                          **DIVERSITY OF CITIZENSHIP**

4          10.    Diversity jurisdiction exists where there is diversity of citizenship
5    between the parties at the time the lawsuit is filed.  *Grupo Dataflux v. Atlas Global*
6    *Group, LP,* 541 U.S. 567, 571 (2004).  In class actions, only the citizenship of the
7    named Plaintiff is relevant to the analysis of whether there is complete diversity
8    under 28 U.S.C. §1332.  *Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 676
9    (7th Cir. 2006).  As shown below, there is complete diversity of citizenship because
10   this is an action between Plaintiff, a citizen of California, and Defendant Veolia
11   Energy North America, LLC who is a citizen of Wisconsin and Massachusetts and
12   Defendants Veolia Water North America Operating Services, LLC and Veolia
13   Water North America - West, LLC who are citizens of Delaware and
14   Massachusetts.

15         11.    To establish citizenship for diversity purposes, a natural person must
16   be a citizen of the United States and domiciled in a particular state.  *Kantor v.*
17   *Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).   Persons are
18   domiciled in the places where they reside with the intent to remain or to which they
19   intend to return.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

20         12.    Plaintiff was, at the time this action was commenced, and still is, a
21   resident and citizen of the State of California.  (See Complaint ¶ 10, attached as
22   Exhibit A to Costantino Decl. at ¶ 2.)

23         13.    The citizenship of a limited liability company for purposes of diversity
24   jurisdiction is the citizenship of its members.  *Johnson v. Columbia Properties*
25   *Anchorage, LP* (9th Cir. 2006) 437 F.3d 894, 899.

26         14.    The citizenship of a corporation is the state where it is incorporated
27   and the state where it has its principal place of business.  28 U.S.C. § 1332(c).
28   With respect to ascertaining a corporation's principal place of business for purposes

1   of diversity jurisdiction, the United States Supreme Court has adopted the "nerve

2   center test." *Hertz v. Friend*, 130 S. Ct. 1181, 1186 (2010).  Under the nerve center

3   test, a corporation's principal place of business is where a corporation's high level

4   officers direct, control and coordinate the corporation's activities.  *Id.*  A

5   corporation can only have one "nerve center."  *Id.* at 93-94.  In evaluating where a

6   corporation's "nerve center" is located, courts will look to the center of overall

7   direction, control, and coordination of the company and will no longer weigh

8   corporate functions, assets, or revenues in each state.  *Id.*

9       15.   Defendant Veolia Energy North America, LLC was at the time of

10  filing of the Complaint, and still is, a limited liability company formed under the

11  laws of the State of Wisconsin.   (Declaration of Whitney Fawcett ("Fawcett

12  Decl."), ¶ 2.  Its headquarters are located in Boston, Massachusetts where its high

13  level officers direct, control and coordinate Defendant's activities.  *Id.* at ¶ 3.  The

14  vast majority of administrative, executive and decision-making functions occur at,

15  and are controlled from its headquarters in Boston, Massachusetts.  *Id.* at. ¶ 3.

16  Therefore, Defendant Veolia Energy North America, LLC was, at the time the

17  Complaint was filed in state court, and still is, a citizen of the States of Wisconsin

18  and Massachusetts within the meaning of 28 U.S.C. § 1332(c)(1).

19      16.   Veolia Energy North America, LLC is comprised of one member:

20  Thermal North America, Inc.  *Id.* at ¶ 4.

21      17.   Thermal North America, Inc. is now, and ever since this action

22  commenced has been, a limited liability company organized under the laws of the

23  state of Delaware.  *Id.* at ¶ 5.

24      18.   Defendant Veolia Water North America Operating Services, LLC was

25  at the time of filing of the Complaint, and still is, a limited liability company

26  formed under the laws of the State of Delaware.  *Id.* at ¶ 2.  Its headquarters are

27  located in Boston, Massachusetts where its high level officers direct, control and

28  coordinate Defendant's activities.  *Id.* at ¶ 6.  The vast majority of administrative,

executive and decision-making functions occur at, and are controlled from, its headquarters in Boston, Massachusetts. *Id.* Therefore, Veolia Water North America Operating Services, LLC was at the time the Complaint was filed in state court, and still is, a citizen of the States of Delaware and Massachusetts within the meaning of 28 U.S.C. §1332(c)(1).

19. Veolia Energy North America Operating Services, LLC is comprised of one member: Veolia Water Americas, LLC. *Id.* at ¶ 7.

20. Veolia Water Americas, LLC is now, and ever since this action commenced has been, a limited liability company organized under the laws of the state of Delaware. *Id.* at ¶ 8. Veolia Water Americas, LLC's sole member is WASCA LLC. *Id.*

21. Defendant Veolia Water North America-West, LLC was at the time of filing of the Complaint, and still is, a limited liability company formed under the laws of the State of Delaware. *Id.* at ¶ 2. Its headquarters are located in Boston, Massachusetts where its high level officers direct, control and coordinate Defendant's activities. *Id.* at ¶ 9. The vast majority of administrative, executive and decision-making functions occur at, and are controlled from, its headquarters in Boston, Massachusetts. *Id.* Therefore, Defendant Veolia Water North America-West, LLC was at the time the Complaint was filed in state court, and still is, a citizen of the State of Delaware within the meaning of 28 U.S.C. §1332(c)(1).

22. Veolia Water North America-West, LLC is comprised of one member: Veolia Water North America Operating Services, LLC. *Id.* at ¶ 10.

23. Veolia Water North America Operating Services is now, and ever since this action commenced has been, a limited liability company organized under the laws of the state of Delaware. *Id.* at ¶ 11. Veolia Water North America Operating Services' sole member is Veolia Water Americas, LLC. *Id.*

24. The presence of Doe defendants in this case has no bearing on the diversity with respect to removal. *See* 28 U.S.C. § 1441(b)(1) (for purposes of

1    removal, "the citizenship of defendants sued under fictitious names shall be
2    disregarded"). DOES 1 through 20 here are fictitious defendants, are not parties to
3    this action and have not been named or served. They should accordingly be
4    disregarded in determining the court's original jurisdiction over this matter.

5    **AMOUNT IN CONTROVERSY**

6         25. Although the Complaint does not specify the dollar amount of
7    damages being sought, Defendants have a reasonable good faith belief that the
8    named Plaintiff seeks damages in excess of $75,000 and the jurisdictional
9    requirements of this Court.

10         26. Without conceding Plaintiff is entitled to damages or could recover
11    damages in any amount whatsoever, and in fact denying same, the amount in
12    controversy in this action exceeds $75,000.00. 28 U.S.C. § 1332(a). Where a
13    plaintiff's state court complaint is silent as to the amount of damages claimed, the
14    removing defendant need only establish it is more probable than not that plaintiff's
15    claim exceeds the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.,*
16    102 F.3d 398, 403-404 (9th Cir. 1996).

17         27. Additionally, where defendants seek to remove a class action under
18    traditional diversity jurisdiction, as long as one named Plaintiff satisfies the
19    amount-in-controversy requirement (and there is complete diversity), a district
20    court may exercise supplemental jurisdiction over the claims of the other plaintiffs
21    in the same case, even if those claims are for less than the jurisdictional minimum
22    for diversity jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546,
23    549, 552–566 (2005); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940–941 (9th Cir.
24    2001); *see also* 28 U.S.C. § 1367 ("[I]n any civil action in which the district courts
25    have original jurisdiction, the district courts shall have supplemental jurisdiction
26    over all other claims that are so related to claims in the action within such original
27    jurisdiction that they form part of the same case or controversy under Article III of
28    the United States Constitution.").

28.   The Court must also presume that Plaintiff will prevail on each and every one of his claims in determining whether the amount in controversy is satisfied. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter* (C.D. Cal. 2002) 199 F. Supp. 2d 993, 1001, citing *Burns v. Windsor Ins. Co.* (11th Cir. 1994) 31 F.3d 1092, 1096 (the amount in controversy analysis presumes that "plaintiff prevails on liability"), citing *Angus v. Shiley Inc.*, (3rd Cir. 1993) 989 F.2d 142, 146 ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated"). Therefore, the argument and facts set forth below may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.* (9th Cir. 2002) 281 F.3d 837, 843, n. 1.

29.   The Complaint asserts the following causes of action: (1) Failure to Pay Minimum Wage; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay All Wages Due Upon Separation of Employment; and (7) Violation of Business and Professions Code §§ 17200, *et seq.* (See Complaint), ¶ 2.) Plaintiff seeks, *inter alia*, the following forms of relief: (1) unpaid overtime; (2) waiting time penalties; (3) statutory and civil penalties; (4) and (5) attorneys' fees and costs. (Complaint, Prayer for Relief.)

30.   **Overtime and Double Time** – Plaintiff alleges that he and other putative class members worked for Defendants in California but were not paid all overtime and double time despite often working over eight hours in a day and/or forty hours in a week. (Complaint, ¶ 49.) Plaintiff claims that he is entitled to recover the unpaid overtime (Complaint, ¶ 53.)   Here, during the relevant time period Plaintiff was paid at an hourly wage rate of $20.00.   (Fawcett Decl., ¶ 12.) During this relevant time period, Plaintiff was employed from approximately December 1, 2017, through January 12, 2019 (approximately 59 total workweeks), during which he worked a total of 950.3 hours of overtime and 21.75 hours of

1  double time.  (Fawcett Decl., ¶ 12.)  Plaintiff claims he was not paid all his wages
2  for all hours worked because he worked while clocked out ("off the clock work")
3  and his incentive pay was not included in his regular rate of pay which would
4  increase his overtime and double time payment rate.  (Complaint, ¶ 29.)

5       31.  Plaintiff fails to allege how much time he worked off the clock and
6  how much and how often he earned incentive pay.  However, assuming that he
7  claims a conservative 30 minutes of off the clock work for every workweek at the
8  overtime rate, this amounts to $885.00 of unpaid overtime.

9       32.  If Plaintiff alleges that he received incentive payments every pay
10  period which resulted in a higher regular rate of pay, even at a conservative amount
11  of $0.50 per hour for overtime and $0.75 for double time hours, the unpaid
12  overtime and double time would be $491.44 [($0.50 x 950.3 overtime
13  hours)+($0.75 x 16.31 double time hours)].

14       33.  **Meal Break Claims** – Plaintiff alleges that Defendants failed to
15  provide lawful meal periods every day and failed to pay meal period premiums for
16  all short, missed or late meal periods (Complaint, ¶s 59-61.)  This would result in
17  one penalty for every day worked by Plaintiff.  We assume he worked five days per
18  week.  He worked 59 workweeks total, five days per week results in approximately
19  295 days worked.  A premium of $20.00 per day results in meal period premiums
20  of $5,900.00.

21       34.  **Rest Break Claims** – Plaintiff alleges that Defendants failed to
22  provide lawful rest periods every day and failed to pay rest period premiums for all
23  short, missed or late rest periods (Complaint, ¶s 66-68.)  This would result in one
24  penalty for every day worked by Plaintiff.  We assume he worked five days per
25  week.  He worked 59 workweeks total, five days per week results in approximately
26  295 days worked.  A premium of $20.00 per day results in meal period premiums
27  of $5,900.00.

28

35.   **Inaccurate Wage Statements** – Plaintiff alleges that Defendants knowingly and intentionally failed to provide timely, accurate, and itemized wage statements in violation of Labor Code § 226.  (Complaint, ¶ 72.) Plaintiff further alleges that Defendants are also subject to civil penalties for Labor Code § 226(a) violations in the amount of $50.00 per employee per violation in an initial citation and $100.00 per employee for each violation in a subsequent citation.  (Complaint, ¶ 74.) Plaintiff received payments during a total of 30 pay periods.  (Fawcett Decl., ¶ 13.)  Thus, penalties under Labor Code §§ 226 amount to $3,000.00.

36.   **Waiting Time Penalties** – Plaintiff alleges that Defendants have willfully failed to pay all wages due to Plaintiff in violation of Labor Code §§ 201 and 202 and therefore is subject to a maximum waiting time penalty of 30 days of wages. (Complaint, ¶¶ 78-82.)  Plaintiff's hourly wage rate was $20.00.   (Fawcett Decl., ¶ 12.)  Plaintiff's last day worked was January 12, 2019.  *Id.*  Plaintiff worked on average 12 hours per day.  *Id.*  Plaintiff alleges that Defendants failed to pay all his earned wages upon termination including proper minimum wage and overtime compensation, meal period premiums, and rest period premiums at the time of discharge.  (Complaint, ¶ 78-82.)  Thus, Plaintiff's alleged waiting time penalties would amount to ([8 regular hours x $20 per hour] + [4 overtime hours x $30 per hour]) x 30 days, or $8,400.00.

37.   **Attorneys' Fees** – Plaintiff also requests an award of attorneys' fees. (Complaint, Prayer for Relief.)  Although Plaintiff seeks an unspecified amount of attorneys' fees, such fees may be taken into account to determine jurisdictional amounts if a statute authorizes fees to a successful litigant. *Goldberg v. C.P.C. International, Inc.* (9th Cir. 1982) 678 F.2d 1365, 1367; *Galt G/S v. JSS Scandinavia* (9th Cir. 1998)142 F.3d 1150, 1155-1156; *Guglielmino v. McKee Foods Corp.* (9th Cir. 2007) 506 F.3d 696, 700 ("[w]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Simmons v.*

*PCR Tech.* (N.D. Cal. 2002) 209 F. Supp. 2d 1029, 1035. "Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy." *Brady v. Mercedes-Benz USA, Inc.* (N.D. Cal. 2002) 243 F. Supp 2d 1004, 1011; *Celestino v. Renal Advantage, Inc.* (N.D. Cal. 2007) 2007 U.S. Dist. LEXIS 33827, *11 ("the amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued after the time of removal"). Here, counsel for Defendants reasonably estimates that attorneys' fees alone will exceed the sum of $75,000 through trial. (Costantino Decl., ¶ 5.) Defendants' attorney, Tracy W. Costantino, has represented employers in employment litigation for over 20 years in California and is familiar with fees awarded to plaintiff's counsel in similar actions filed in California and federal court. (*Id.*) Based on Ms. Costantino's experience and Plaintiff's allegations, it would be reasonable to expect that attorneys' fees alone in this case will exceed the sum of $75,000 through trial. (*Id.*)

38. **Total Potential Estimate of Plaintiff's Recovery** -- Given the above, the amount Plaintiff could potentially recover individually from his alleged claims are:

| | |
|---|---|
| Off the Clock Overtime: | $    885.00 |
| Regular Rate/Incentive: | $    441.44 |
| Meal Period Premium: | $ 5,900.00 |
| Rest Period Premium: | $ 5,900.00 |
| Inaccurate Wage Statement: | $ 3,000.00 |
| Waiting Time Penalty: | $ 8,400.00 |
| Sub-Total: | $ 24,526.44 |
| Attorneys' Fees: | $ 75,000.00 |
| **TOTAL:** | **$ 99,526.44** |

1       WHEREFORE, Defendants respectfully remove the above action pending in

2   the San Bernardino County Superior Court.

3

4   Dated:  February 19, 2019                  JACKSON LEWIS P.C.

5

6                              By:    /s/ Tracy Wei Costantino

7                                     Tracy Wei Costantino
                                  Jade M. Brewster

8                                     Attorneys for Defendants
                                  VEOLIA        ENERGY      NORTH

9                                     AMERICA, LLC; VEOLIA WATER
                                  NORTH   AMERICA   OPERATING

10                                    SERVICES, LLC; VEOLIA WATER
                                  NORTH AMERICA-WEST, LLC

11

12  4824-4684-8136, v. 1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12